**IN THE UNITED STATES COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| FREDERICK TEDESCHI<br>PLAINTIFF | : | |
| vs. | : | C.A. NO.: 2005-304 ML |
| TRAVIS & NATALIE, INC.<br>DEFENDANT | : | |

**MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY ON COUNT III - BREACH OF WARRANTY OF SEAWORTHINESS**

Comes now your Plaintiff, Frederick Tedeschi, Jr., and moves this Honorable Court to enter partial summary judgment for him as to liability on Count III of the First Amended Complaint alleging Breach of Warranty of Seaworthiness.

As grounds for this motion, Plaintiff would rely on the attached memorandum of points and authorities.

Respectfully submitted
Plaintiff, Frederick Tedeschi
By his Attorneys:
PACKER & O'KEEFE, LLC

Merlyn P. O'Keefe, Esquire
1220 Kingstown Road
Peace Dale, RI 02879
(401) 789-4850 phone
(401) 782-4210 fax
Ct. Reg. #2439

CERTIFICATION

I hereby certify that I mailed a true copy of the within on the 12th day of May 2006 to J. Renn Olenn, Esquire, OLENN & PENZA, 530 Greenwich Avenue, Warwick, RI 02886.

Bonnie S. Dowling

**IN THE UNITED STATES COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| FREDERICK TEDESCHI<br>PLAINTIFF | : | |
| vs. | : | C.A. NO.: 2005-304 ML |
| TRAVIS & NATALIE, INC.<br>DEFENDANT | : | |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF PLAINTIFF FREDERICK TEDESCHI'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

## (1) FACTS

Plaintiff Frederick Tedeschi, now thirty-five years old, had the best job ever starting in August 2004 as a deck hand aboard the F/V Travis and Natalie, an offshore dragger, fishing out of Point Judith, Rhode Island which was and is owned by the Defendant.

On September 30, 2003 at approximately 5:00 a.m. while aboard the vessel, which had been Plaintiff's home away from his true home in the eastern point of Long Island, he was attacked by Benjamin Thomas Troyer (Troyer), who had captained the F/V Travis & Natalie the previous trip and was scheduled once again to captain the F/V Travis and Natalie on a trip due to leave Point Judith at 1:00 p.m. that afternoon. Plaintiff was also scheduled to take that trip as a crew member.

The 29th of September was a shore day and both Plaintiff and Troyer were converting the vessel from one fishery to another and, as preparation for sailing the next day, had driven together to town to pick up an oxygen or oxy-acetylene tank to keep onboard. At the end of the workday, Troyer invited Plaintiff and Mike Long, a non-party to this action and a non-crew

member, to his house. As a point of information, Plaintiff Tedeschi pled *nolo contendere* to a simple assault on Troyer which was alleged to have occurred at Troyer's home in Richmond. This conduct is irrelevant for determinating whether the onboard assault on Tedeschi occurred in the service of the ship, as District Judge Eldon Fallon held, because the relevant question attaches to the seaman's status at the time of the incident–not before, not after. In Re. *Gulf Pride Marine Service, Inc.* 1997 WL 118394 (ED. La) Moreover, once a person who has been assaulted is in a place of safety, as Troyer was once Tedeschi left, Troyer certainly could not pursue him but had a duty to attempt to retreat if he was consciously aware of an open, safe, and available means of escape. *State* v. *Quarles* 504 A. 2d 473 (RI 1986). Plaintiff and Mike Long were driven back to the boat by Troyer's wife, Rose Troyer, and left off there between 1:45 a.m. and 2:30 a.m. The driving time to Point Judith from Richmond is approximately 35 minutes. While there is evidence of alcohol consumption at Troyer's, only drunkiness is admissible. *Handy* v. *Geary* 285 A.2d 783 (RI 1992) and there is none.

Plaintiff turned in aboard the vessel as was specifically permitted by the vessel owner and early that morning, while standing in front of the commode in the one lavatory aboard the vessel, heard the growl of a chain saw and, as he turned in the direction of the growl, the chainsaw sliced through the wooden door in the hands of Troyer, made contact with the right forearm and one of the fingers of his right hand. The police responded, apparently in response to a 911 call, and arrested Defendant charging him with various assault counts which remain pending in the Superior Court for Washington County W2/2005-122A.

Plaintiff Tedeschi was emergently operated on at South County Hospital by David Burns, D.O. and was left, according to Edward Akelman, M.D. the expert witness hired by Defendant,

with a 10% permanent impairment of his right upper extremity caused by the chainsaw assault according to his examination and subsequent report of 22 February 2006. Plaintiff is, likewise, unable to do anything above medium work according to Catherine Marcille, another expert in hand rehabilitation designated by Defendant, in her report of 22 February 2006.

Mr. Tedeschi returned to work aboard the same vessel some eight weeks later with great difficulty, was soldiering through it, but was fired. He continues in pain and weakness to this day and is no longer fishing.

As there is no medium work aboard a dragger fishing out of Point Judith and the principal of the Defendant, Frederick Mattera, who has fished thirty years out of Point Judith admits, the work aboard his vessel is heavy when measured against Ms. Marcille's definition of medium it is clear fishing–a life he loved, is no longer one he can pursue.

## (2) APPLICABLE LAW

Historically, under the general maritime law, seamen in the service of the ship have been able to recover damages caused by the vessel owner's breach of the warranty of seaworthiness. *Chandris* v. *Latsis* 515 U.S. 347, 354 (1995), *Pacific Steamship Co.* v. *Peterson* 278 U.S. 130 (1928). To fall within the protection of the warranty, the seaman "must of course, at the time be "in the service of the ship" by which is meant that he must be generally answerable to its call to duty rather than actually in performance of routine tasks or specific orders." *Farrell* v. *U.S*. 336 U.S. 511, 516 (1949) thus, the general maritime law covered a fisherman who was injured on a shore jaunt on a Sunday even though the boat was not due to sail until Tuesday with preparatory work to be done Monday, because the captain could have truncated the work and sailing

schedule. Macedo v. F/V Paul & Michelle 868 F.2d 519 (1st Cir. 1989)

The decisions of the Supreme Court have undeviatingly reflected an understanding that the owner's duty to furnish a seaworthy ship is absolute and completely independent of his duty under the Jones Act to exercise reasonable care" Mitchell v. Trawler Racer 362 U.S. 539 (1960), and the warranty applies as well as "when the ship is at a dock as when it is at sea." Sea Shipping v. Sieracki 328 U.S. 85 (1946)

"It is essentially a species of liability without fault, analogous to other well known instances in our law. Derived from and shaped to meet the hazards which performing the service imposes, the liability is neither limited by conceptions of negligence nor contractual in nature... It is a form of absolute duty owing to all within the protective range of its humanitarian policy." Seas Shipping Co. v. Sieracki 328 U.S. 85, 94-5 (1946) (*emphasis supplied*), Ferrara v. A & V Fishing 99 F. 3d 449 (1st Cir. 1996)

To prevail, a seaman must prove a breach of the ship owner's "absolute duty to provide to every member of his crew a vessel and appurtenances reasonably fit for this intended use." Ferrara v. A & V Fishing Co. 99 F. 3d (1st Cir. 1996). There is "no reason to draw a line between the ship and gear on the one hand, and the ship's personnel on other." Boudoin v. Lykes Bros. S. S. Co. 348 U.S. 336, 339 (1955)

In the context of shipboard assaults, "a premeditated attack with an unmistakably deadly weapon lends full support to Plaintiff's claim that the warrant of seaworthiness was breached in that such a seaman was not equal in disposition and seamanship to the ordinary men in the calling. Connolly v. Farrell Lines 268 F. 2d 733 (1st Cir. 1959) cert. denied 361 U.S. 902 (1959) and such a seaman renders the ship as unseaworthy as a "defective winch" Clevenger v.

*Star Fish and Oyster Co.* 325 F. 2d 397, 399 (5th Cir. 1993)

**(3) CONCLUSION**

There is no question that a chainsaw must be considered a deadly weapon. Nor, is there any question that Plaintiff sleeping aboard the ship the night before the ship was to sail at 1:00 p.m. that afternoon, was in the service of the ship, particularly, in light of Plaintiff's representation that he wanted to tidy up the boat before Fred Mattera brought guests aboard the boat at 9:00 a.m., and the discretion given Captain Troyer to truncate the sailing time. Also, to be considered was Plaintiff's contribution as a sort of night watchman.

Accordingly, Plaintiff Tedeschi's motion for partial summary judgment, as to liability on his complaint for the vessel's breach of the warranty of seaworthiness, should be granted.

Respectfully submitted,
Plaintiff, Frederick Tedeschi
By his Attorneys,
PACKER & O'KEEFE, LLC

Merlyn P. O'Keefe, Esquire
1220 Kingstown Road
Peace Dale, RI 02879
(401) 789-4850 phone
(401) 782-4210 fax
Ct. Reg. #2439

CERTIFICATION

I hereby certify that I mailed a true copy of the within on the 12th day of May 2006 to J. Renn Olenn, Esquire, OLENN & PENZA, 530 Greenwich Avenue, Warwick, RI 02886.

Bonnie S. Dowling