JRO:MKD:co 37171 \pleading\37171St Und Facts

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| FREDERICK TEDESCHI | : | |
| | : | |
| VS. | : | C. A. NO. 2005-304ML |
| | : | |
| TRAVIS & NATALIE, INC. | : | |

**DEFENDANT'S STATEMENT OF UNDISPUTED FACTS PURSUANT TO LOCAL RULE 12.1**

1. The *F/V Travis & Natalie* is wholly owned by Travis & Natalie, Inc. Travis & Natalie, Inc. is owned by Frederick Mattera ("Mattera").

2. Plaintiff, Frederick M. Tedeschi ("Tedeschi"), was employed as a crewman aboard the *F/V Travis & Natalie* at various times during the year 2004. Tedeschi was a resident of Greenport, Long Island, New York, at all times relevant to this action.

3. Benjamin "Tom" Troyer ("Troyer") was employed aboard the *F/V Travis & Natalie* at various times during the year 2004. At the time, he lived with his wife, Clara "Rose" Troyer, in Richmond, Rhode Island.

4. On or about September 27, 2004, the *F/V Travis & Natalie* docked in the port of Galilee, Narragansett, Rhode Island, after fishing in the squid fishery for several days.

5. The squid fishery in which the *F/V Travis & Natalie* had been operating was closed in or around late September 2004. In order to prepare the boat to fish in a different fishery, the crew aboard the *F/V Travis & Natalie*, including plaintiff, Troyer, Fred Angel, and Peter Tutko, performed "gear work" at the dock to make the boat ready for operating in the next fishery.

6. On or about September 29, 2004, all four (4) crewmen conducted gear work until approximately 6 o'clock in the evening.

7. After finishing the gear work, Troyer, Tedeschi, and Mike Long ("Long"), a friend of Tedeschi's from Long Island, stood in the parking lot of the dock, talking and drinking whiskey for several hours.

8. At some point between 9:30 and 10:00 p.m., Troyer suggested to Long and Tedeschi that they accompany him back to his house in Richmond, Rhode Island, approximately 35 minutes away, to continue drinking and socializing, and for the two crewmen to stay overnight at Troyer's house. The three traveled to Troyer's house together in Troyer's pickup truck. The three stopped at

a liquor store on the way to buy more alcohol for the evening.

9. After arriving at Troyer's home, the three drank more whiskey and several beers each. After drinking and talking for several hours, a fight broke out between Troyer on one side and Long and Tedeschi on the other. At some point during the altercation, Troyer's face encountered an empty whiskey bottle which was in Tedeschi's hand. Tedeschi and Long then left the house and waited outside.

10. In an effort to avoid another confrontation, Clara "Rose" Troyer ("Rose"), Troyer's wife, drove Tedeschi and Long back to Point Judith in Troyer's truck.

11. Mattera agreed to allow plaintiff to sleep on the boat the night before a trip as an accommodation to the plaintiff, since plaintiff was from Long Island and the ferry got him to Pt. Judith too late in the morning of a trip and Tedeschi did not have local lodging.

12. After dropping Tedeschi and Long off in the parking lot in Galilee, Rose drove back home to Richmond. The plaintiff and Long talked for approximately one hour on the boat. Somewhere between 5:00 and 6:00 a.m., Long left the boat to drive to his uncle's house where he was staying. The plaintiff went into the living quarters of the boat to sleep.

13. In the parking lot, Long observed Rose and Troyer drive up in Troyer's pickup truck. Troyer proceeded to slash all four tires on Tedeschi's vehicle. He took a chainsaw out of the back of his pickup truck and proceeded to walk onto the *F/V Travis & Natalie*. In the meantime, either Rose or Long called the Narragansett Police.

14. Troyer walked into the living quarters of the vessel to confront either Tedeschi alone, or both Tedeschi and Long. Plaintiff was in the bathroom when Troyer entered. The bathroom door was locked. Troyer started the chainsaw and proceeded to cut through the bathroom door. While Troyer was cutting through the bathroom door, Tedeschi suffered a laceration to his forearm. Plaintiff has testified that the laceration to his forearm was suffered after Troyer cut through the door, and while Troyer could see Tedeschi. There is conflicting evidence of this.

15. After the initial laceration to Tedeschi's forearm, Troyer started screaming at him, took out a knife, and threatened Tedeschi with it. Tedeschi will testify that Troyer put the knife to his throat.

16. After realizing that Tedeschi had been cut with a chainsaw, Troyer backed off, suggested that Tedeschi would need to go to the hospital and proceeded to leave the vessel.

17. As he was leaving the vessel, Troyer was confronted by a Narragansett police officer who told him to drop the knife and to get down on the ground. He was arrested, and eventually charged and convicted of assault with a deadly weapon.

18. Tedeschi was charged with assault with a deadly weapon for hitting Troyer in the face with the empty bottle of Jack Daniels. He eventually plead nolo contendere to a reduced charge of simple assault.

19. Troyer's prior criminal history includes the following:

1982 - Breaking and entering a dwelling without consent. Plea of nolo contendere.

1986 - Breaking and entering a building with felony intent. Plea of nolo contendere.

1997 - Simple assault/battery. Plea of nolo contendere.

DEFENDANT,
By its Attorney,

J. Renn Olenn, Esq. #0623
OLENN & PENZA, LLP
530 Greenwich Avenue
Warwick, RI 02886
PHONE: (401) 737-3700
FAX: (401) 737-5499

Martin K. DeMagistris, Esq. #6089
OLENN & PENZA, LLP
530 Greenwich Avenue
Warwick, RI 02886
PHONE: (401) 737-3700
FAX: (401) 737-5499

**CERTIFICATION**

I certify that I sent a true copy of the within on 5/12/06 to:

Merlyn O'Keefe, Esq.
Packer & O'Keefe
1220 Kingstown Road
Peace Dale, RI 02879