**IN THE UNITED STATES COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| FREDERICK TEDESCHI | : | |
| PLAINTIFF | : | |
| | : | |
| vs. | : | C.A. NO.: 2005-304 ML |
| | : | |
| TRAVIS & NATALIE, INC. | : | |
| DEFENDANT | : | |

**PLAINTIFF FREDERICK TEDESCHI'S OBJECTION TO DEFENDANT TRAVIS & NATALIE, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Comes now your Plaintiff Frederick Tedeschi and objects to Defendant Travis & Natalie, Inc.'s Motion for Partial Summary Judgment as to a portion of Plaintiff Tedeschi's Jones Act Claim.

As grounds for this objection, Plaintiff would rely on the attached Memorandum of Points and Authorities.

Respectfully submitted
Plaintiff, Frederick Tedeschi
By his Attorney,

Merlyn P. O'Keefe, Esquire
1220 Kingstown Road
Peace Dale, RI 02879
(401) 789-4850 phone
(401) 782-4210 fax
Ct. Reg. #2439

CERTIFICATION

I hereby certify that I mailed a true copy of the within on the 7th day of July 2006 to J. Renn Olenn, Esquire, OLENN & PENZA, 530 Greenwich Avenue, Warwick, RI 02886.

Bonnie S. Dowling

**IN THE UNITED STATES COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| FREDERICK TEDESCHI | : | |
| PLAINTIFF | : | |
| | : | |
| vs. | : | C.A. NO.: 2005-304 ML |
| | : | |
| TRAVIS & NATALIE, INC. | : | |
| DEFENDANT | : | |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF PLAINTIFF TEDESCHI'S OBJECTION TO**
**DEFENDANT TRAVIS & NATALIE, INC.'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant Travis and Natalie, Inc. (the vessel owner) moves for summary judgment on certain particulars of the Jones Act claim:

(1) Plaintiff Tedeschi was not acting with the course of employment at the time of his assault, nor in the hours leading up to his injury, and

(2) Plaintiff Tedeschi is unable as a matter of law to establish constructive or actual knowledge of Troyer's violent propensities.

The vessel owner did <u>not</u> launch a similar motion directed at Plaintiff's claim that the living quarters of the vessel, not having a means to lock from the inside, which the vessel owner unequivocally admits, ("The door has never had a lock on it.") <u>Mattera's Answers to Interrogatories #24,</u> violated the Jones Act. (ATT 1) That claim of Plaintiff currently pends unchallenged by the vessel owner.

**(1) The Course of Employment**

Tedeschi agrees that under the Jones Act a seaman must be injured in the course of employment to proceed. How could he not?–it is in the very text of the statute.

In arguing that Tedeschi was not in the course of employment, the vessel owner relies on a single authority *Colon* v. *Apex Marine Corp*. 832 F. Supp. 508 (D. R.I. 1993) affirmed 35 F.3d 16 (1st Cir. 1994) *cert*. *denied* 514 U.S. 1018 (1995)

Colon was stabbed in a shore-side bar by a crew member which is in stark contrast to this case where Tedeschi was stabbed by a crew member in the living quarters of the vessel they both worked on somewhere near dawn when the vessel was scheduled between 1:00 p.m. that day.[1] Without question, the Captain had the right, and often exercised it, to order men to do the ship's business in between trips. In deed , it was expected of them. Deposition of Frederick Mattera of 14 April 2006 at 56:25 to 57:18.

Tedeschi in his deposition said he was aware that Mattera was bringing executives from Sunderland Marine Insurance Company Limited, on whose board Fred Mattera sits, to visit the

---

[1]Anthony Joseph Mattera, the brother of Fred Mattera and current captain of the vessel, testified that the vessel was scheduled to leave between 8:00 a.m. and 10:00 a.m. and he was to be the captain. Deposition of Anthony Mattera of 27 June 2006 (not yet transcribed). Obviously, this makes Plaintiff's case even stronger as the assault happened a mere two hours before sailing time.

vessel.[2] Tedeschi Deposition at 116, ln 16-22. It is unquestioned that as Plaintiff slept aboard the boat, and he was specifically allowed to do so, Deposition of Frederick Mattera of 14 April 2006 at 34:17, he was competent and would be available to manually pump the bilges if the bilge/water level alarm sounded–an alarm which did not trigger an automatic bilge pump, a potentially dangerous situation if left unattended to. Deposition of Anthony John Mattera of June 27, 2006

(not yet transcribed)

Assuming *arguendo*, but only *arguendo* that Tedeschi was not going to tidy up before the 9:00 a.m. visit, he was still aboard the vessel seven hours or so before sailing. A sailing day is a busy day for all crewmen, ice, food, and fuel must be taken aboard, the crew set, and the vesel and gear put shipshape in Bristol fashion. Even before a sailing day, seamen were subject to the call of the vessel and there were any number of reasons a vessel could leave earlier than scheduled, e.g., weather, good fishing, repairs completed earlier than expected.

Deposition of Frederick Mattera Deposition at 37:14 to 39:8.

The course of employment assault cases break down into two lines. If the assault was

---

[2]While the vessel owner on 15 June 2006 filed a Statement of Undisputed Facts Pursuant to Local Rule 12.1, which probably is in response to Tedeschi's cross motion for summary judgment on the Breach of Warranty Count, and "disputes that Plaintiff was tidying up the vessel for Mattera's arrival at the vessel at 9:00 a.m. and leave ( ) (sic) him to proof," there is no reference to such evidence in the record. Plaintiff admits he is at 6's and 7's trying to sort out and tag the various factual statements, i.e. "Defendant's Statement of Undisputed Facts Pursuant to Rule 12.1" certified on 12 May 2006, "Defendant's Statement of Facts In Dispute Pursuant to Local Rule 56" certified on 15 June 2006, and "Defendant's Amended Statement of Undisputed Facts Pursuant to Local Rule 56 certified on 23 June 2006 to a motion on objection of Defendant. Although the Court denied Plaintiff's Motion to Strike Defendant's Motion for Summary Judgment and In Particular Its Undisputed Statement of Facts, So Called as moot, Defendant's Amended Statement remains unintegrated.

onboard, the course of employment is found; if the assault took place on shore, course of employment is not found. In Re. Gulf Pride Marine Services 1997 WL 118394 (ED La)

As District Judge Fallon wrote: "A review of cases and commentators reveal that a distinction is generally drawn between errant deviant or wayward activity ashore and that which occurs on the vessel while the seaman is subject to the call of duty. The former is more likely to be held not within the course but the latter is generally considered within the course of employment." Even if Tedeschi were drunk, which he was not, he was still in the course of employment. *Id.*

It is likely, in recognition of this, that the First Circuit in affirming Senior Judge Lagueux recognized the course of employment question for a shore-side bar incident presented there as "open to reasonable debate" 35 F.3d at 16 and it is likely that it would have joined those other decisions finding course of employment for ship-board assaults as being closed to reasonable debate, i.e. it would have found for a seaman assaulted on board. It may be significant that no court of admiralty has followed the *Colon* decision for a shipboard assault. Cf. *Schillage* v. *Tidewater Crewing* 1995 U.S. Dis. Lexis 2224 (ED La 1995)

Assuming *arguendo*, but denying the Defendant's allegation of intoxication by Tedeschi, the uncontroverted facts are that whatever consumption Tedeschi undertook, it was in Richmond at Troyer's home and significantly earlier. There is no evidence that Mr. Tedeschi was either consuming alcohol or under its influence at the time of the assault.

Moreover, the question of what occurred at the Troyer's and before is of no consequence since Tedeschi's " injury did not occur during these episodes. The Jones Act requires that an injured seaman be in the course and scope of employment at the time of the injury–not before or

after." In Re. *Gulf Marine Pride, supra.*

Over this course of employment issue, at the very least, it is Tedeschi who is entitled to partial summary judgment.

**(2) The Vessel Owner Was on Constructive Notice of Troyer's Violent Propensities**

Plaintiff does not quarrel with the general proposition advanced by Defendant when the prior crime was relatively minor, i.e. unauthorized use of a motor vehicle, that:

> If the criminal conduct which the employer failed to uncover bears little relationship to violent propensities, the courts have held that any negligence of the employer was not such that the employer should not reasonably foreseen the assault.

*Lambert* v. *Morania Oil Tanker Corp.* 677 F.2d 245 (2d Cir. 1982)

But, that is simply not this case. Here, the employee, Troyer, had a prior conviction for Breaking and Entering a Dwelling Without Consent in 1982, another for Breaking and Entering a Building With Felony Intent in 1986, and a third for simple assault in 1997. Defendant's Amended Statement of Undisputed Facts of 23 June 2006 at Paragraph 28.

However, these convictions of Troyer are not trifles–two are for felonies exhibiting a total disrespect of the protective walls of a building–and one of them a dwelling, but also the exact behavior at issue here–Breaking and Entering A Dwelling and a separate incident of assault.

The corollary of this proposition is as the First Circuit held: "a negligent retention claim does not lie absent sufficient evidence to enable a rational fact finder to infer that the employer reasonably should have foreseen that its precautions were inadequate to protect persons in appellants' position from an unreasonable risk of harm resulting from a recurrence of the

employee behavior of which the employer had prior notice." *Favorito* v. *Pannell* 27 F.3d 716 (1st Cir. 1994) (Emphasis Supplied) In *Favorito*, a diversity case, the vessel owner was aware that a seaman had been violating the harbor speed limits in a dinghy used as a tender. When that same seaman violated the vessel's order not to take the dinghy in the Captain's absence and caused serious injuries to the guests of the vessel when he ran them into a buoy, no liability was found. This is as it should be because there was no nexus between the prior bad conduct of the seaman and the misappropriation of the vessel. However, as has been shown, the nexus lacking in *Lambert* and *Favorito* is tightly drawn between Mr. Troyer's past convictions and his assault of Plaintiff.

In the First Circuit, Breaking and Entering into a business is a serious crime and Breaking and Entry into a Dwelling is all the more serious. *U.S.* v. *Mastera* 435 F.3d 56 (1st Cir. 2006) and the same may be said as to generic assault and battery crimes. *U.S.* v. *Breynard* 951 (F.2d 457 (1st Cir. 1991)

Moreover, "Under any circumstance, a potential employer has an obligation to conduct a reasonable investigation into [a potential employee's] work experience, background, character, and qualifications." *Welsh Manufacturing* v. *Pinkerton, Inc*. 474 A.2d 436 (R.I. 1993)

In hiring Mr. Troyer, Defendant did no more than chat with two previous employers as (Att 1) evidenced by Interrogatory #15: "Please state the date Benjamin Troyer first worked on the F/V Travis and Natalie, the name of the person who did the actual hiring, the references that Benjamin Troyer gave, who checked on those references and what the references said." To which, Defendant responded: "Troyer first worked on the Travis and Natalie in 2000 on a transit trip. I knew he had worked on the F/V Jason and Danielle, the F/V Luke and Sarah, both

highliner vessels in the Port of Galilee. I was told that he was a good worker by both of the owners of these vessels." (Attachment 4) Although Fred Mattera had known for several years that one could get a criminal record off line for free, he never used it when evaluating potential crew members. Deposition of Frederick Mattera of 14 April 2006 at 55:22–56:4, nor does he ask potential employees if they have a criminal record or so much as even to take a job application. *Id.* at 62:3-10. The vessel did not so much as have him fill out a job application as Defendants' response to Plaintiff's First Request for Production #5 for, "Any job application of Benjamin Troyer" to which it responded, "None," Certified 21 April 2006. (Attachment 2)

Bold as brass, Fred Mattera testified that even had he known Troyer had been arrested for second degree child abuse, felony assaults, vandalism, drug possession and Breaking and Entering, he probably would have hired him if he met all the other requirements; and even had he been convicted of those charges, it would not have necessarily changed his probably being hired. Deposition of Frederick Mattera at 71-72.

Complementing the law is the opinion of Plaintiff's retained expert, Captain J. Grant Parker, that given the ready, easy, and free-of-charge access to individual's criminal records in Rhode Island on line, the failure to view those records of seven contacts of Mr. Troyer on line, or secure them in some other way, demonstrated a lack of due diligence since, " The presence of any one of these offenses on the criminal record of a management applicant would cast a significant doubt in the mind of a responsible employer as to the applicant's suitability..." Report of J. Grant Parker 23 December 2005 (Attachment 3)

As Captain Parker opined, "this attack was indeed foreseeable and unavoidable and, therefore, presented an unreasonable degree of risk to members of the crew, most especially to

Mr. Tedeschi" (sic) *Id.* at 35 and "the standard of care applicable to the hiring of seamen is to investigate the background and suitability of the prospective employee, and that it was deviated from. *Id* at 35.

## CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment should be denied as to the course of employment and constructive knowledge of Troyer's propensities. Indeed, Plaintiff should be granted summary judgment on these issues.

Respectfully submitted
Plaintiff, Frederick Tedeschi
By his Attorney:

Merlyn P. O'Keefe, Esquire
1220 Kingstown Road
Peace Dale, RI 02879
(401) 789-4850 phone
(401) 782-4210 fax
Ct. Reg. #2439

## CERTIFICATION

I hereby certify that I mailed a true copy of the within on the 7th day of July 2006 to J. Renn Olenn, Esquire, OLENN & PENZA, 530 Greenwich Avenue, Warwick, RI 02886.

Bonnie S. Dowling