MAY 1 5 2006

MKD:mes 37171 \pleadings\37171ansirogs.wpd

Att 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

FREDERICK TEDESCHI :
:
VS. : C. A. NO. 2005-304ML
:
TRAVIS & NATALIE, INC. :

**DEFENDANT'S ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

1. Do you know whether or not Benjamin Troyer has been convicted of any crimes?

**ANSWER:** Yes.

2. If yes, please state when you learned this information and list any such conviction by state, court, court address, docket number, charged convicted of, disposition of charge convicted of and date of any such disposition.

**ANSWER:** I found out about his previous convictions, as set forth in plaintiff's expert report, through this litigation. Objection to the remainder of the information requested as that information is public and is equally accessible to the plaintiff.

3. Do you know whether or not any crew member or employee within the past ten years has been convicted of any crimes?

**ANSWER:** Yes.

4. If yes, please state that crew member's name, when you learned this information, how you learned this information and list any such conviction by state, court, court address, docket number, charged convicted of, disposition of charge convicted of and date of any such disposition.

**ANSWER:**

a. Anthony J. Mattera. I believe he was convicted for possession of cocaine and marijuana. I learned of his conviction because he is my brother. He was convicted in Rhode Island Superior Court, Washington County. Objection to the remainder of the interrogatory as that is public and is equally accessible to plaintiff.

b. Robert Favali. I believe Favali was convicted of drug possession in 1999. To the best of my recollection, I found out through word of mouth through other owners, captains or crew members at Point Judith.

c. Jack Fallon. I believe Jack Fallon had drug related convictions. I am unaware of any more details.

d. Brian Fallon. I believe Brian Fallon had drug related convictions. I am unaware of any more details.

5. Do you know whether, prior to the assault of Frederick Tedeschi, Benjamin Troyer had been involved in any controversies, fights, or assaults involving:

(a) Plaintiff
(b) a member of the crew
(c) any person

**ANSWER:**

(a) No.
(b) No.
(c) No.

6. If your answer is yes, please describe the incident, its date and where it occurred.

**ANSWER:** N/A.

7. Did you know prior to this assault whether Benjamin Troyer had a proclivity for:

(a) alcohol use
(b) alcohol abuse
(c) narcotics use (prescribed)
(d) narcotics abuse

**ANSWER:** Objection. Relevance.

(a) Yes. I was aware that Troyer used alcohol.
(b) No. I am not aware that Troyer abused alcohol.
(c) No.
(d) Yes. I was aware that Troyer had used cocaine and/or marijuana several years before the incident. I learned this through word of mouth and never personally observed it.

8. If your answer is yes, please state as to any subparagraph, how you learned of any such proclivity and what you learned of any such proclivities.

**ANSWER:**

(a) I do not recall specifically how I knew that Troyer drank alcohol. I simply knew he was not a teetotaler.

(b) N/A.

(c) N/A.

(d) I believe I learned of this through word of mouth. I cannot recall from whom specifically.

9. Had you ever discussed, counseled, warned or observed alcohol or drug possession by or intoxication of Benjamin Troyer or plaintiff?

**ANSWER:** Objection. The interrogatory is vague and overly broad. Without waiving said objections, I told both Troyer and the plaintiff that there were no drugs or alcohol permitted on the vessel and that no crewmen were permitted to board the vessel under the influence of drugs or alcohol. I also specifically told the plaintiff that there was no drinking or drugs allowed while he was staying on the Travis & Natalie, either on the vessel, or off the vessel and returning to the vessel thereafter. I have never observed alcohol or drug possession of either Troyer or plaintiff.

10. If your answer is yes, please state:

(a) the date of any such discussion, counseling, warning or observation;

(b) the nature of any such conduct you observed or gave rise to the discussion, counseling or warning.

**ANSWER:**

(a) Each of them were told of this policy when they were first hired. I do not recall the specific date.

(b) There was no particular conduct. I give the same warnings to all crewmen hired to work on my vessel.

11. Prior to being served, did you assume litigation was anticipated and, if so, on what date did you make that assumption?

**ANSWER:** Objection. Interrogatory is vague, overly broad and irrelevant.

12. As to any medical bills you are aware of, please state:

(a) The name of the healthcare provider;

(b) The date of the bill;

(c) The amount of the bill;

(d) How you came to learn of the bill's existence; and

(e) Whether you paid it.

**ANSWER:** Objection. Interrogatory is overly vague and overly broad. Without waiving said objection, I am aware of only those medical bills produced by plaintiff as a result of this litigation. At his deposition, plaintiff referred to a medical bill generated as a result of a prior incident at his

deposition. I have never been presented with that bill.

13. Did defendant, its agents, employees or contractors ever tell plaintiff it would pay maintenance and cure or, otherwise, take care of him? If so, please advise as to the date, time, place and person(s) who told plaintiff.

**ANSWER:** No.

14. Please describe the hiring process of the men listed in your answers to 3 and 4 above by date, time, who contacted whom and by what means, i.e. phone, e-mail, in person, and whether there was a written job application.

**ANSWER:** Objection. Relevance. I do not recall the specific dates or times of any of the persons listed in 3 and 4. Anthony J. Mattera—Mr. Mattera is my brother. Jack Fallon—I knew Jack Fallon for several years as an acquaintance. He had served as both crewman and captain on other vessels. I believe he approached me looking for a position on the boat. Brian Fallon—Brian had fished for several years on other boats. I knew him from working at Point Judith. I believe he approached me about a position on the boat. There was no written job application. Robert Favali—I can't recall whether Favali approached me about a position on the boat or I approached him. There was no written job application. For some, I may have called or spoken to other people about the applicant.

15. Please state the date Benjamin Troyer first worked on the F/V Travis & Natalie, the name of the person who did the actual hiring, the references that Benjamin Troyer gave, who checked on those references and what those references said.

**ANSWER:** Troyer first worked on the Travis & Natalie in 2000 on a transit trip. He did not go fishing at that time. I did the actual hiring. I knew that he had worked on the F/V Jason & Danielle, the F/V Luke & Sarah, both highliner vessels in the port of Galilie. I was told that he was a good worker by both of the owners of those vessels.

16. Please state whether anyone was required to do work in the window between the last trip before the day of the assault, what the work consisted of, how many hours were spent doing it, stating the time work started and ended.

**ANSWER:** The squid fishery that the Travis & Natalie was operating in has been closed. The crew was performing boat work to switch gear in order to operate in a different fishery. Switching gear and getting the boat ready for the next trip would take approximately three 8-hour days of work.

17. Please state whether the F/V Travis & Natalie had ever been broken into or had objects stolen from her, the date of any such break or larceny and whether a police report was filed and/or an insurance claim filed.

**ANSWER:** Objection. Interrogatory is overly broad and irrelevant. Without waiving said objections, the Travis & Natalie has been broken into twice, once in the late 1980s while at Point

Judith and again in New Bedford in 2002 or 2003. A VCR, a box for satellite TV, and binoculars where stolen. A police report was made for the Point Judith incident in the late 1980s. No police report was made for the New Bedford incident. No insurance claim was filed for either.

18. Please state whether any crew member on the F/V Travis & Natalie had assaulted, been assaulted or been in a fight and give the name of the person, the date of the incident and the description.

**ANSWER:** Objection. Relevance. The interrogatory is unduly vague and over broad. Without waiving said objection, no.

19. Please state whether you have heard of any assaults, fights, break ins in the dock area at Point Judith over the last ten years, and addresses of the persons involved, a description of the incident and whether any claim was made with an insurer and whether the claim was paid out, and how you came to gain any such knowledge i.e., from other fishermen, through your position with the Point Club or Sunderland Marine Mutual.

**ANSWER:** Objection. Relevance. The interrogatory is unduly vague and over broad. Without waiving said objection, I have heard of a few assaults, fights, and break-ins in the last 10 years. I cannot recall specifically any fights taking place on board a vessel. Injuries resulting from assaults and fights have occurred over the years. Thomas Hinckley aboard the F/V Atlantic Prince was injured as a result of a fight in 2005. I do not know any addresses or other persons. I believe Mr. Hinkley has filed a claim against the Atlantic Prince.

20. If defendant Travis & Natalie, Inc., or any other boat previously owned by Frederick Mattera or entities of which he as a principal, is or previously has been the subject of a claim whether ripening into a lawsuit, or not, whether criminal, civil, (personal injury or otherwise) or administrative in the past ten (10) years, please state:

(a) The name and address of any such claimant or plaintiff and his, her or its attorney;
(b) The basis of his, her or its claim;
(c) The date of any such claim; and
(d) The docket number of each proceeding.

**ANSWER:** Objection. Relevance. The interrogatory is unduly vague and over broad. Without waiving said objection:

(a) Brian Handrigan;
(b) Personal injury;
(c) November 11, 2004
(d) USDC-RI 05-303 ML

21. Please state the average cost of food consumed by plaintiff, Frederick Tedeschi, on a daily basis while he was a member of the crew and aboard the F/V Travis & Natalie.

**ANSWER:** Objection. Relevance. I cannot calculate how much the plaintiff ate on a daily basis.

22. Was plaintiff fired by defendant? If so, by whom, on what date, and for what reason?

**ANSWER:** Defendant specifically objects to the term "fired." Without waiving said objection, plaintiff returned after his injury for one trip. He did not show up for the next trip which caused the crew and the boat to lose two days of fishing. The boat and the crew had lost thousands of dollars because of his absence and as a result, I told the plaintiff he could no longer serve on the vessel.

23. Please state all facts on which you base your affirmative defenses specifically pled in your answer, breaking each defense down one by one.

**ANSWER:** Objection. Calls for attorney work product and attorney mental impressions. Asking for "all facts" is impermissably broad. The facts have been stated in depositions and the relevant police reports.

24. Please state what means are available to lock the living area of the F/V Travis & Natalie from the interior as of the date of the assault? as of the date you answer these interrogatories?

**ANSWER:** The pilot house doors are locked by a chain and padlock. The aft door, enclosing the living area and kitchen is secured by four locking "dogs." The door can be opened from the inside or the outside. This door has never had a lock on it.

TRAVIS & NATALIE, INC.

By: ______________________
Frederick Mattera

Subscribed and sworn to before me this 12 day of May, 2006.

______________________
NOTARY PUBLIC
My Commission Expires: 9/27/08

**CERTIFICATION**

I certify that I sent a true copy of the within on 5/12/06 to:

Merlyn O'Keefe, Esq.
Packer & O'Keefe
1220 Kingstown Road
Peace Dale, RI 02879

Maureen E. Sundin